24 C.C.P.A.(Patents)

## In re KIMBALL.
### Patent Appeal No. 3778.

Court of Customs and Patent Appeals.
March 29, 1937.

Paul Carpenter, of St. Paul, Minn. (E. G. Carpenter, of St. Paul, Minn., and H. H. Benjamin, of Washington, D. C., of counsel) for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's application for patent was filed in the United States Patent Office November 25, 1932. Three claims stand allowed, but eighteen were rejected by the examiner for want of invention over prior art, six of them (the method claims) being also rejected because held to define merely the function of the apparatus. The Board of Appeals affirmed the decision of the examiner and appellant brings the matter to this court for review.

The rejected claims are numbered 1, 3, 17 to 28, inclusive, and 31 to 34, inclusive.

Claims 1, 3, and 22 to 25, inclusive, are method claims. The others are for the apparatus.

As illustrative of the subject-matter, we quote claims 1 and 17, as follows:

"1. A method of dispensing a sheet material having on one side a normally active externally exposed adhesive coating, which includes as steps thereof causing the active adhesive coated side of the sheet to contact with and thereby adhere to a movable measuring surface, and controlling the amount of sheet dispensed by regulating the movement of said surface."

"17. In a sheet dispensing apparatus, in combination, means for supporting a quantity of sheet material said material having an exposed and normally pressure sensitive adhesive coating on one surface thereof, and a roller for measuring the sheet material and to which said material is caused to adhere by the action of said coating while dispensing."

The references cited are:
Anable, 897,510, September 1, 1908.
Drew, 1,760,820, May 27, 1930.
Krueger, 1,914,375, June 20, 1933.

The application discloses a method of and an apparatus for dispensing, "in predetermined or measured quantities," sheet material, particularly tape having one of its surfaces coated with adhesive. The specification mentions the tape disclosed in the cited patent to Drew, which patent states, in substance, that the tape, apparently of paper, is of peculiar utility in masking portions of the surfaces of automobile bodies when paint is applied to such surfaces by spraying. Appellant describes the adhesive as a "pressure sensitive adhesive" and says in his specification that the adhesiveness is "relied upon in a large degree to complete the function of the method and apparatus involved in this invention."

Before us, counsel for appellant emphasizes that feature of the claims expressed in claim 17, supra, by the clause reading, "a roller for measuring the sheet material and to which said material is caused to adhere by the action of said coating while dispensing." This feature is present in all the claims and is disclosed in the specification and drawings. The tape to be dispensed is in roll form and is placed upon a drum which serves as a carrier for the roll. As the tape is drawn from the roll it passes over a roller, referred to as a "measuring member," and then below a substan-

tially horizontal metal member provided with a serrated edge for severing the tape at the point desired. The roller is equipped with apertures located adjacent its ends and spaced at any desired intervals. A pawl is provided for engaging the apertures and controlling the rotation of the roller, the pawl being mounted upon a spring lever. When the spring lever is pressed downwardly the pawl is disengaged from the roller. When the pressure upon the spring is released the pawl again contacts the roller, and when it engages in aperture the operation ceases while the tape is severed. So, the length of the tape to be cut is determined by the distance between the apertures. By keeping the spring lever pressed downwardly, however, the tape may be drawn out to any length desired. It is stated at different places in the specification that the tape adheres to the roller or measuring member, and this adhesion is claimed to rotate the member as the tape is drawn by the hand of the operator. In view of the issue, it is unnecessary to state further details of the operation.

The Drew reference, as has been said, is alluded to in appellant's specification as disclosing a form of tape for the dispensing of which appellant's device is designed. The Krueger patent seems to have been cited with reference to certain of the claims which show a particular arrangement of the severing device. It discloses a device in which tape passes over a roller and is severed by means located adjacent the roller and above the tape being dispensed.

The principal reference is the patent to Anable. This patent is for a strip-serving device, seemingly paper strips either gummed or ungummed. When gummed paper is used, means are provided for moistening the gum; when ungummed paper is used, an adhesive is substituted for the water in the moistening device. The material from which the strips are to be served, or dispensed, is mounted upon a spindle. When pulled at the end the material unrolls from the roll, passes under a small guide roller and then between two rollers, designated in the drawing by the numerals 5 and 14, and thence under another small roller beyond which it passes over the moistening unit to the means whereby it is severed. Adjacent one end of the roller 5, and mounted on the same shaft, is a toothed gear designated in the drawing by the numeral 7. Upon the face of roller 5 is a ratchet gear. A pawl mounted on the toothed gear co-operates with a ratchet gear to cause the roller 5 to rotate in a clockwise direction but permitting the toothed gear to rotate counter-clockwise without imparting movement to the roller 5 which is stated to be loosely mounted upon a horizontal shaft, which shaft is loosely journaled in the framing of the machine. Anable supplies a pair of levers upon one end of which, he states, "is loosely mounted a roll 14 and also a gear 15, preferably of substantially equal diameter, the gear 15 being adapted to mesh with the gear 7 when the strip is drawn upon for use."

The examiner held Anable's lower roller, 5, to be the measuring roller, saying that the contention on the part of appellant that the upper roller, 14, is such "is not in agreement with Anable's specification," and broadly held, in effect, as to all the claims, that "there would be no invention in dispensing the paper of Drew in Anable's machine."

The board said: "If a sheet of material such as is shown by Drew be substituted in the Anable patent, it is believed that all of the present claims are met in all substantial respects."

Appellant argues that ambiguity exists in that part of Anable's specification which reads: "I mount upon the framing a lever or pair of levers 13, upon one end whereof is loosely mounted a roll 14 *and also a gear 15.*" (Italics quoted from brief.)

Appellant insists that the italicized phrase is capable of an interpretation to mean that the gear 15 is loosely mounted upon the lever end as well as roller 14, but that, if this be the case, it results (for the reasons given in explaining the operation of the device) that Anable's disclosure is of an inoperative device. It is then said, with explanation of the operation of the parts, that to render the patent operative the upper roller, 14, becomes the measuring member rather than the lower roller, 5, and that, if this latter be the case, the measuring roller would not be operated by drawing upon the adhesive tape passing between it and the lower roller, but by the gear arrangement described.

The board made no definite declaration as to which of Anable's rollers constituted the measuring roller, but we deduce from its decision that the lower roller, 5, was so regarded. It is noted that the examiner said, stating reasons therefor, "it is not believed it would be invention to dispense with the upper or pressure roller 14 of Anable."

In his brief the Solicitor for the Patent Office argues that appellant is entitled to rely only upon the feature of his measuring roller being rotated by drawing upon the adhesive tape (the sticky qualities of the tape affecting the rolling process) for patentability, and says that "strictly speaking the tape dispensed is not legitimately a part of the structure for dispensing the tape. * * * The material operated upon by a machine or apparatus is not legitimately a part of the structure of such a machine or apparatus." Authorities are cited.

As to this contention it seems sufficient to say that neither of the tribunals below rejected any of the claims upon this ground and we may not, therefore, consider it. In re Bryson D. Horton, 54 F.(2d) 961, 19 C.C.P.A. (Patents) 871.

The board said: "In applicant's device, the sheet is guided in such a way that the tacky side of the sheet will be pressed against a considerable surface area of the roller as the sheet is drawn out. Thus there will be sufficient adhesion of the sheet to the roller so that it can control the dispensing of the sheet. This feature together with the means for limiting the movement of the roller, seem to be quite important to give a simple structure for dispensing this kind of a sheet. None of the claims contains these essential limitations. As broadly as the claims are drawn we fail to see that they distinguish over the prior art, particularly the Anable patent, for the reasons stated by the examiner."

It would seem from this that had the *claims* defined the feature of controlling the operation of the roller by means of the tape together with the means for limiting the movement of the roller, with sufficient definiteness (as the specification apparently did) they might have been regarded as patentable.

In view of this expression of the board, we have examined the limitation respecting this feature, as expressed in each of the claims, with great care, because Anable does not seem to us to teach any operating function of the measuring roller (whether it be the lower roller or the upper roller) by the tape itself. We do not find, however, that the claims at issue go any further than to claim the *adherence* of the tape to the measuring roller, and we think that if such tape were run through the Anable device there would of necessity be a certain amount of adherence.

Since certain claims stand allowed, it may be that if appellant discloses matter really patentable but not properly claimed, he may yet be permitted upon the return of the case to the Patent Office to amend by presenting new and proper claims. That, however, must be determined in the Patent Office and not by us in this proceeding.

In view of our conclusion upon the foregoing ground, which applies to all the claims, we need not discuss the second ground upon which the method claims were rejected.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in the decision of this case.